**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**FERNANDO GAUD and
DARREN DIONE AQUINO,**

    **Plaintiffs,**

**vs.**                                                  **Case No. 4:21cv104-MW-MAF**

**THE FEDERAL ELECTION
COMMISSION, et al.,**

    **Defendants.**
**_____/**

## REPORT AND RECOMMENDATION

Before the Court is a "third amended complaint," ECF No. 47, filed by pro se Plaintiffs Fernando Gaud and Darren Dione Aquino. Numerous Orders have been entered which provided guidance to Plaintiffs as to what they must do to present a viable complaint. ECF Nos. 6, 15, 22, 25, 31, and 45. The last Order entered informed Plaintiffs that they would be given "one final opportunity to present a third amended complaint" which "must comply with the Federal Rules of Civil Procedure as explained previously." ECF No. 45 at 9. Plaintiffs did not heed the guidance provided to them.

First, as noted above, this case is brought by two Plaintiffs. However, Rule 20 provides that two persons "may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). In this case, Plaintiffs have improperly attempted to join together claims of two Plaintiffs which do not arise out of the same transaction, nor do the claims share a question of law or fact.

Additionally, Rule 20 permits a case to proceed against multiple Defendants, but such joinder "in one action" is only permitted "if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 20(a)(2). In this case,

Page 3 of 14

Plaintiffs seeks to proceed against at least 13 Defendants.[1]  The basis for those claims is not related but are entirely separate incidents and facts.

Thus, the third amended complaint, ECF No. 47, is improper, does not comply with Rule 20, and cannot proceed.  Because Plaintiffs were given multiple opportunities to cure that deficiency and did not, *see* ECF Nos. 31 and 45, the third amended complaint should be now dismissed.

Plaintiffs do jointly present a claim against Defendant Barr, the former U.S. Attorney General.  ECF No. 47 at 9.  However, the claim is conclusory only, unsupported by a clear statement of facts showing the basis for a claim against Defendant Barr.  Plaintiff contends only that because Title II was not implemented, "Plaintiff Aquino and Plaintiff Guad suffered the loss of practicing their Due Process Rights." *Id.*  That assertion is insufficient because the Due Process Clause exists to protect a liberty interest, yet Plaintiffs have not specifically alleged what Defendant Barr did that violated due process, or when any such event occurred.

---

[1] The listing of Defendants is not consistent.  On the title page of the complaint, as well as in Section II of the complaint form, Plaintiffs list only two Defendants - Johnson and Barr.  ECF No. 47 at 1, 3.  However, Plaintiffs then provide an attachment to the complaint which lists 11 others persons or agencies, but do not include Defendants Johnson and Barr.  *Id.* at 8.  Liberally construed, the complaint is deemed to have been brought against a total of 13 Defendants.

Page 4 of 14

This claim also appears to be based on a "respondeat superior" theory of liability which is insufficient in a civil rights action. Piazza v. Jefferson Cty., 923 F.3d 947, 957 (11th Cir. 2019) (stating "[s]upervisory officials cannot be held liable under § 1983 for unconstitutional acts by their subordinates based on respondeat-superior or vicarious-liability principles" and citing Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Instead, there must be "allegations of personal participation" or facts showing "a 'causal connection' between a supervisor's actions and the alleged constitutional violation." Piazza, 923 F.3d at 957 (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)); *see also* Am. Fed'n of Labor v. City of Miami, 637 F.3d 1178, 1190 (11th Cir. 2011). As Plaintiffs were previously advised, *see* ECF No. 31 at 4, a supervisory official cannot be held liable for the actions or omissions of others.

Here, Plaintiffs claim only that Defendant Barr "had a duty to ensure that all government entities, their officers, State, local and Federal, would be in full compliance with the ADA." ECF No. 47 at 9. They contend "no prioritized actions [were] taken by the DOJ to secure the liberties, life and property for Plaintiff Gaud, a disabled veteran with limited mental capacity . . . ." *Id.* That is insufficient to state a viable claim against Defendant Barr.

Plaintiffs allege no facts to show what the Defendant did that Plaintiffs believe violates the ADA. Plaintiffs have not pointed to a "policy or custom" created by Defendant Barr that resulted in a constitutional violation or a violation of the ADA.

Furthermore, although the claim is asserted on behalf of both Plaintiffs, the claim concerns an allegation of "neglect and abuse that Plaintiff Gaud suffered at the Riverdale Nursing Home," *id.*, which is located in New York. The harm was to Plaintiff Gaud, not Plaintiff Aquino; thus, it is not appropriate for both Plaintiffs to assert such a claim. Moreover, any claim concerning abuse at a Nursing Home in New York must be filed in New York. Venue is not proper for the claim to proceed in this Court. For all these reasons, the claim against Defendant Barr must be dismissed.

Plaintiffs also attempt to jointly bring a claim concerning "Congressman Balart's seat . . . in District 25." ECF No. 47 at 10. It appears that the Congressman was re-elected without opposition. However, Plaintiff Aquino contends he "had the right to run in District 25" to oppose Balart's seat, but was placed on the ballet by "the Board of

Election" as a Candidate in District 19.  *Id.* at 10.  Plaintiffs Gaud and Aquino contend that they could not vote in District 25.  *Id.* at 10-11.

First, the Board of Election is not named as a Defendant in this case. Second, the right to vote is not specific to a certain district.  Neither of the Plaintiffs' First Amendment rights were violated by voting in District 19 as opposed to District 25; they were still able to exercise their right to vote. Third, Plaintiffs allege no wrongdoing by Defendant Balart other than to claim that he "interfered with the election and voting process by keeping his seat without an election in District 25."  *Id.* at 11.  It is not unlawful to be re-elected without opposition and the complaint present no facts to support the conclusory assertion that Defendant Balart "interfered" in an election. As such, the complaint is insufficient to state a claim against Defendant Balart and he should be dismissed from this action.

Although Plaintiffs named Jennifer L. Edwards, the Supervisor of Elections in Collier County, Florida, as a Defendant, *see* ECF No. 47 at 8, the complaint fails to allege that she violated the rights of either Plaintiff. The complaint states only that Plaintiff Aquino had a conversation with her in July 2020 at a "Republican Breakfast."  *Id.* at 10.  Plaintiff Aquino asked questions about voting accommodations "for disabled voters in nursing

homes" for person such as his uncle, Plaintiff Gaud. *Id.* Plaintiff Aquino also "mentioned his disability, dyslexia, and how this disability should be accommodated." *Id.* at 11. During that conversation, it is alleged that Defendant Edwards said that providing accommodations in settings such as hospitals and nursing homes were "too difficult to implement" and would "not be provided, other than mail in ballots." *Id.* at 11. Despite that assertion, Plaintiffs do not allege facts showing that they were unable to vote in the 2020 election. Thus, Plaintiffs have not demonstrated a constitutional violation. Furthermore, Plaintiffs' unexplained assertion that "[m]ail in ballots are not an accommodation" is conclusory and insufficient. and the claim against Defendant Edwards is insufficient on its face. Therefore, the complaint must also be dismissed as to Defendant Edwards.

Plaintiffs have once again included a claim[2] against the State of Florida's Department of Motor Vehicles. *Id.* at 10. This claim is limited to Plaintiff Gaud and asserts that the Department violated the ADA and HIPAA by requiring Plaintiff Gaud to supply "his DD214 and his medical

---

[2] This claim was not part of the initial complaint, *see* ECF No. 1, nor was it included in the first amended complaint. *See* ECF No. 30.

records" to obtain a disabled veteran license plate. *Id.* Plaintiff Gaud[3] claims the Department has "no right to demand such documentation for a license plate that demonstrates he is a disabled veteran." *Id.* The complaint alleges that Plaintiff Gaud presented his "honorable discharge Veteran ID card and a letter from his physician," but it appears he did not receive the license plate. *Id.* Plaintiff requests that the DMV should be directed "to surrender that plate forthwith." ECF No. 47 at 10.

There are several problems with this claim. First, the complaint alleged that Plaintiff Gaud "was escorted to the DMV in Naples," Florida in May of 2020 to obtain a disabled veteran license plate. *Id.* However, in the first amended complaint, it was alleged that Plaintiff Gaud was not released from the nursing home until October 13, 2020. *See* ECF No. 30 at 25. It is unclear how Plaintiff Gaud could seek a license plate in Florida prior to his release from the nursing home in New York.

---

[3] The third amended complaint alleges that Plaintiff Gaud was held at the Riverdale Nursing Home "against his will from 2017 to October 2020," until he was finally released to live with his nephew, Plaintiff Aquino. ECF No. 47 at 11. Plaintiff Gaud is described in the complaint as "an obese, over medicated, under cared, disabled senior." *Id.* at 12. It was alleged that he was, at the time of his release anyway, "nearly non-verbal." *Id.* The first amended complaint alleged that Plaintiff Gaud "was unable to care for himself as a result of his limited mental and physical inability." ECF No. 30 at 25. Plaintiff Gaud was deemed "mentally incompetent" and a guardian had been appointed for him. *Id.* at 25-26. Plaintiff Gaud was released from Riverdale on October 13, 2020. *Id.* at 25; *see also* ECF No. 47 at 12.

Case No. 4:21cv104-MW-MAF

Additionally, the description of Plaintiff Gaud in the complaint suggests that he was non-verbal and unable to care for himself. ECF No. 47 at 12. In light thereof, it is not apparent that Plaintiff Gaud was capable of driving, had a drivers license, and had insurance for the vehicle which is required to receive a vehicle tag. *See* FLA. STAT. § 320.02.[4] Moreover, the in forma pauperis application that was initially submitted for Plaintiff Gaud stated, under penalty of perjury, that Plaintiff owned no property and did not have an automobile. ECF No. 2 at 3. It may be the case that the in forma pauperis application was signed in January of 2021 and Plaintiff had the vehicle previously, but in light of the other issues, it is not clear that this claim can proceed. Plaintiff Gaud has not alleged sufficient facts to demonstrate that his rights were violated when he was not provided with a vehicle license plate.

The remaining claims presented in the third amended complaint concern allegations such as of substandard care and neglect by the Riverdale Nursing Home, fraudulent billing by persons with that facility,

---

[4] The statute requires "every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state [to] register the vehicle in this state." FLA. STAT. § 320.02(1). "An individual applicant must provide a valid driver license or identification card issued by this state or another state or a valid passport" to register a motor vehicle. FLA. STAT. § 320.02(2)(a).

complicity by the facility's attorney concerning the fraud, the failure of the Governor of the State of New York to ensure the safety of residents at the nursing home. ECF No. 47 at 11-14. That facility is located in the Bronx, New York. *Id.* at 8. All events and claims which concern Riverdale must be litigated in New York. As Plaintiffs were previously advised, venue is not appropriate in this Court. ECF No. 31 at 7. Venue is appropriate to bring a civil action in this Court if a defendant resides in this judicial district or if a "substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. 28 U.S.C. § 1391(b)(1)-(2). Here, venue is lacking as Defendants Hahn, Barkhordar, Cohen, Cuomo, and the Riverdale Nursing Home reside in New York and the events giving rise to those claims occurred in New York. Those claims must be dismissed.

Plaintiffs also bring a claim against Defendant Saul for failing to implement accommodations for disabled individuals. ECF No. 47 at 14. Plaintiffs contends there is a "lack of accessibility" and barriers in communicating with local Social Security offices. *Id.* The complaint alleges long "hold times" on the telephone and complaints left "unanswered." *Id.* In particular, Plaintiff Aquino contends that he is a "non-attorney representative" with Social Security and has been deprived of his

agreed upon fee, "denied fair and equal treatment," and "denied effective communication" because the SSA sends correspondence to the client, but not to him as the "advocate representative." *Id.* Plaintiff claims that the lack of communication "negatively impacts" his clients. *Id.*

The claims against former Social Security Commissioner Andrew Saul are not appropriately litigated in this case. First, a claim concerning a fee owed to Plaintiff Aquino must be brought within the Social Security case itself, not separate litigation. Second, Plaintiff has not alleged any facts which show that he has been discriminated against or denied equal treatment because the complaint does not allege that other persons receive more favorable treatment or are able to have speedier telephone access.

In addition, the claim for Defendant Saul's failure to implement accommodations is insufficient because there are no allegations presented which reveal Plaintiffs made specific requests for accommodations which were denied by the Defendant. Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999). None of Plaintiffs' assertions are supported by facts which state what accommodation was requested, or when Defendant was advised that an accommodation was needed. It is

true that federal law requires the provision of a "reasonable accommodation" for a disability, but that duty to "is not triggered unless a specific demand for an accommodation has been made." Gaston, 167 F.3d at 1363. Furthermore, there are no allegations which reveal that problems with inaccessibility were so widespread and well known such that the Defendant should have taken steps to provide an accommodation. The claims against Defendant Saul are insufficient and should be dismissed.

The remaining claim is brought against Senior United States District Court Judge Joanna Seybert of the Eastern District of New York. ECF No. 47 at 15-16. Plaintiff Aquino contends that Judge Seybert failed "to follow simple guidelines of her post" and is a "trespesser of the law." *Id.* Plaintiff contends that she failed to follow the law and denied Plaintiff's rights. *Id.* He claims that he was entitled to summary judgment, procedural accommodations, and that Judge Seybert was biased. *Id.*

If a judge fails to follow the law and errs in deciding a case, the remedy is to file an appeal. A dissatisfied litigant is not entitled to sue a judge for rulings made in a case over which the judge presides. If a litigant believes a judge has a personal bias, the remedy is to file a motion for disqualification. Litigants are not permitted to sue judges for bias in a

separate case. As Plaintiffs were previously informed, ECF No. 45 at 4 and ECF No. 31 at 7-8, judges have absolute judicial immunity. Stump v. Sparkman, 435 U.S. 349, 355-357, 98 S.Ct. 1099, 1104-05, 55 L. Ed.2d 331 (1978); Simmons v. Conger, 86 F.3d 1080, 1084-85 (11th Cir. 1996). All claims brought against Judge Seybert are barred.

Furthermore, this Court has no authority to remove a judge from the bench or "reverse her decisions." *See* ECF No. 47 at 21. A federal district court is a trial court and not an appellate court. If Judge Seybert's rulings were wrong, Plaintiff Aquino's avenue of relief was to file an appeal. This Court cannot overturn a decision by another federal District Court judge.

Having fully reviewed Plaintiffs' third amended complaint, there appears no claim that can proceed. Plaintiffs have been provided sufficient opportunity to file a viable complaint, but have not done so. This case should now be dismissed for failure to state a claim.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiffs' third amended complaint, ECF No. 31, be **DISMISSED** for failure to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on December 8, 2021.

    S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.